UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANTONIO CRESPO,

        Plaintiff,

v.

HENKEL CORPORATION,

        Defendant.

_____/

Case No. 1:06-CV-325

HON. GORDON J. QUIST

## **OPINION**

Plaintiff, Antonio Crespo, brought this claim against defendant, Henkel Corporation ("Henkel"), under the laws of the state of Michigan, alleging that Henkel negligently breached various duties to Crespo, resulting in Crespo's injury and disability. Crespo alleges that Henkel: breached its duty to adequately maintain metalworking fluid; failed to warn Crespo of the dangers posed by metalworking fluid; failed to discharge its duties under its contract with Crespo's employer; and breached the duties it owed to Crespo as a third party beneficiary of that contract. Now before the Court is Henkel's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment. For the following reasons, and because the Court will consider the entire record, the Court will grant Henkel's motion for summary judgment.

### **I. Background**

Crespo was hired to work at the General Motors Hydra-Matic facility in Three Rivers, Michigan, in 1979. The facility was subsequently purchased by American Axle & Manufacturing ("AAM"). Crespo worked as a Senior Manufacturing Technician and also occasionally performed cleaning tasks. Crespo was a member of UAW Local 2093.

Henkel was the commodities manager for the AAM facility pursuant to a Commodity Management Supplier Agreement (the "Agreement") entered into by Henkel and AAM on September 10, 2002, which became effective on January 1, 2003. Under the Agreement, Henkel managed AAM's chemical commodities, including metalworking fluid ("MWF"), to "promote the efficient procurement, inventory, delivery, and utilization" of such commodities. (Agreement ¶ 1.)

In 2003, Crespo developed a wheezing cough, chest tightness, and shortness of breath after cleaning a tank containing MWF. In January 2004, Crespo underwent medical tests which indicated that Crespo had hypersensitivity pneumonitis ("HP"), a condition caused by the bacteria and fungi that grow in MWFs. On March 22, 2005, Crespo underwent an independent medical examination for AAM's worker's compensation carrier, which concluded that Crespo had contracted HP from contaminated MWF at the AAM facility. Crespo filed his complaint in Michigan state court on March 31, 2006, and Henkel removed the matter to this Court based on diversity jurisdiction on May 15, 2006.

## II.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III.  Discussion

Crespo's negligence claim, Count I of his complaint, alleges that Henkel breached its duties to Crespo by failing to adequately maintain the MWF as required by the Agreement, failing to warn Crespo, or others similarly situated, of the dangers posed by contaminated MWF, and failing to discharge its duties under the Agreement.  Crespo alleges in Count II of his complaint that he was a third party beneficiary of the Agreement and that Henkel breached its contractual duties owed him under the Agreement.

In Michigan, a prima facie case of negligence "requires a plaintiff to prove four elements: duty, breach of that duty, causation, and damages." *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 463, 683 N.W.2d 587, 590 (2004) (citing *Case v. Consumers Power Co.*, 463 Mich. 1, 6, 615 N.W.2d 17, 20 (2000)).  Henkel asserts that even if Crespo's allegations are true, Crespo has failed to state a claim for negligence because Crespo cannot show that Henkel owed Crespo a duty. Whether Henkel owed a duty of care to Crespo presents a question of law for the Court. *Id.* at 463, 683 N.W.2d at 590.

**A.     Crespo's Negligence and Failure to Warn Claims Fail as a Matter of Law**

Crespo's negligence claim rests on the proposition that Henkel owed a duty to AAM's employees, including Crespo, based on the relationship of the parties and the alleged "high degree of certainty of injury if Henkel fails to monitor and appropriately treat" the MWF. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss at 5.) Crespo claims that this duty is independent of the Agreement between AAM and Henkel.  Crespo includes a specific claim that Henkel failed to discharge its duties under the Agreement.

Under Michigan law, to bring a negligence claim against Henkel for its failure to adequately maintain the MWF, Crespo must show that Henkel owed him a duty "separate and distinct" from

3

the Agreement. *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 683 N.W.2d 587 (2004). The plaintiff in *Fultz* was injured in a slip and fall accident in a parking lot. The defendant was under a contract with the lot owner to provide snow removal and salting services for the lot. The plaintiff alleged that the defendant owed her a duty to "exercise reasonable care in performing its contractual duties" that was independent of its contractual duty to remove snow and salt the lot. *Id.* at 463-64, 683 N.W.2d at 590. The Michigan Supreme Court determined that the plaintiff's claim failed as a matter of law because the defendant did not owe any duty to the plaintiff. The court ruled that a plaintiff who is not a party to a contract, but brings a claim based on that contract, must show that the defendant owed the plaintiff a duty that was "separate and distinct from the defendant's contractual obligations." *Id.* at 467, 683 N.W.2d at 592.

The Eastern District of Michigan recently decided a case very similar to the instant case. GM employees brought a negligence claim against a chemical management company with whom GM had contracted to monitor the use of MWF at a GM facility. *See Irrer v. Milacron, Inc.*, No. 04-72898, 2007 WL 677902 (E.D. Mich. Mar. 6, 2007). This Eastern District decision is not binding upon the undersigned, but the decision appears to be an accurate application of Michigan law. Among the plaintiffs' claims were allegations that the management company breached its duties to monitor and control the biological contaminants in the MWF, failed to warn plaintiffs of the hazards of MWF and the need for protective equipment, and failed to perform the duties of a chemical manager in a safe and careful manner with regard to the plaintiffs' safety. The defendant in *Irrer* moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that the plaintiffs' claims were based upon the defendant's alleged failure to perform the duties owed under its chemical

4

management services contract with GM.  The plaintiffs countered that the duty owed was separate and distinct from the contractual obligations.[1]

The district court found that the plaintiffs failed to allege a claim that was separate and distinct from the defendant's contractual duties.  Citing the Michigan Supreme Court in *Fultz*, the court found that the plaintiffs did not allege that the defendant had created a "new hazard" to the plaintiff that did not previously exist.  *Irrer*, 2007 WL 677902 at *3-4 (citing *Fultz*, 470 Mich. at 469, 683 N.W.2d at 593). Rather, the plaintiffs merely alleged that the defendant failed to monitor the chemicals and assure their safe use, duties that the defendant was contractually obligated to perform. The court stated:

> GM may have owed a duty to Plaintiffs, its employees, to make sure that Milacron's MWFs were used safely at the GM plants where Plaintiffs worked. Taking Plaintiffs' allegations here as true, GM sought to fulfill that duty by contracting with Defendant Milacron to provide chemical management services, and Plaintiffs were injured when Milacron failed to adequately provide those contracted-for duties. Thus, similar to the plaintiff in *Bertz* [*v. Norfolk S. Ry.*, No. 3:03CV7011, 2005 WL 1566758 (N.D. Ohio July 5, 2005)], Plaintiffs here do not allege facts showing that Milacron created a new hazard that would give rise to a duty independent of Milacron's contractual obligations to GM.
>
> Despite their claims to the contrary, Plaintiffs allege no facts showing that Defendant Milacron actively engaged in misconduct, thus creating a hazard that did not previously exist. Rather, there are only allegations that Milacron failed to properly fulfill the duties under its chemical management contract with GM. These failures do not create a new hazard that would give rise to an independent duty of care owed to Plaintiffs.

*Id*. at *4.

Crespo's negligence claims arising from Henkel's alleged failure "to adequately  maintain the metalworking fluid" and "to discharge [its] duties under the [Agreement]" likewise fail because

---

[1] The plaintiffs in *Irrer* did not include a claim that they were third party beneficiaries to the contract between GM and Milacron.

5

these are merely allegations that Henkel did not properly fulfill its duties under the Agreement. Taking Crespo's allegations as true, Crespo has not shown that Henkel created a "new hazard" that did not previously exist that would give rise to a duty independent of the Agreement. The complaint alleges that "Henkel was under contract with American Axle to (among other things) maintain the metalworking fluids" and that Henkel breached its alleged duty to Crespo by "[f]ailing to adequately maintain the metalworking fluid." (Compl. at ¶¶ 6, 7, 11.) AAM, which owed a duty to Crespo to make sure that the MWFs were safely utilized, attempted to fulfill that duty by contracting with Henkel to provide chemical management services, and Crespo was allegedly injured when Henkel failed to adequately provide those contracted-for services. Therefore, as in *Irrer*, Crespo's negligence claim must be dismissed because it arises from Henkel's alleged failure to exercise reasonable care in its discharge of duties under the Agreement, and Crespo has not alleged a "separate and distinct" duty as required by Michigan law.

*Irrer* also addressed a failure to warn claim similar to Crespo's. The *Irrer* plaintiffs alleged that the defendant's failure to warn the plaintiffs of the dangers posed by MWFs created a new hazard and, therefore, that this duty was separate and distinct from the defendant's contractual duties. The court rejected this argument for two reasons:

> First, to the extent Milacron had a contractual duty to warn GM about these dangers, Plaintiffs cannot allege a duty owed to them that is separate and distinct from that contractual duty. Second, to the extent Milacron owed Plaintiffs a duty to warn because it was a manufacturer/supplier of MWFs to GM, this is a product liability claim and as such is governed by statute.

*Id*. at *5. The same holds true in the instant case. Crespo's failure to warn claim is not brought as a product liability claim under the relevant Michigan statute, but is brought as part of the negligence claim. Crespo has not submitted any facts or alleged any actions giving rise to a products liability claim under MCL § 600.2946 or §§ 600.2945(h) and (i).

6

Crespo asserts that it was the expectation of the AAM/UAW Health and Safety Committee (the "Committee") "that Henkel would carefully monitor metal working fluid and advise the Committee if there were problems which could adversely affect the health of their employees." (Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss at 6-7 (citing Hensley Aff. at ¶ 6).) Crespo claims that Henkel breached its duty by failing to warn the Committee. However, Crespo has not shown that this duty to warn existed separate and distinct from the Agreement. The Agreement provided that, as part of its chemical management duties, Henkel must obtain written approval by AAM prior to shipping any "hazardous or potentially hazardous materials" and that Henkel "shall be responsible for supplying all Material Safety Data Sheets in compliance with all OSHA and similar regulations for all Material." (Agreement at ¶ 6.) The affidavit of Robert Hensley, a member of the Committee, states that "Henkel had a full time employee in our plant performing, monitoring and testing the metal working fluids, among other duties." (Hensley Aff. at ¶ 9.) This is consistent with the terms of the Agreement related to Henkel's duties with regard to hazardous or potentially hazardous materials, and Crespo has not presented evidence that Henkel had a duty to warn Crespo that was separate and distinct from its contractual duty under the Agreement.

Crespo does not try to distinguish *Fultz* or *Irrer*, but instead relies on cases decided before *Fultz*, and one case distinguishable from the instant case. For example, Crespo cites cases discussing the duty of a company to protect bystanders from dangers caused by instrumentalities under its control, *Schultz v. Consumers Power Co.*, 443 Mich. 445, 506 N.W.2d 175 (1993), and the duty of an employer to protect its employees from workplace hazards, *Plummer v. Bechtel Constr. Co.*, 440 Mich. 646, 489 N.W.2d 66 (1992). In *Schultz*, the Michigan Supreme Court found that a power company "that maintains and employs energized power lines must exercise reasonable care to reduce potential hazards as far as practicable," and "has an obligation to reasonably inspect and repair wires

7

and other instrumentalities." *Schultz*, 443 Mich. at 451, 506 N.W.2d at 178. *Plummer* discussed the duty that arises when the owner of a construction project who retains control over the work and employees of its hired contractor. The court found that Detroit Edison, the owner of the power plant under construction, owed a duty because it did not truly delegate the task of construction to Bechtel, the general contractor, but retained control over the project, had over 125 employees at the site, and "had the responsibility of assuring that safety programs were implemented and that the provisions of the contract as they related to safety were being carried out." *Plummer*, 440 Mich. at 659, 489 N.W.2d at 72. Furthermore, Edison was "empowered to warn a subcontractor directly or to ask Bechtel to require that appropriate safety precautions be taken," and "retained the authority to order Bechtel to hire or terminate any subcontractor." *Id*. Bechtel, the general contractor, likewise owed duties to subcontractors, over whom it had control, based on the duty of a general contractor to guard against avoidable dangers in common work areas. *Id*. at 666, 489 N.W.2d at 75. Unlike these cases, Henkel had no control or authority over AAM's facility or AAM's employees.

Therefore, Crespo's Count I negligence claims that Henkel failed to adequately maintain the MWF, failed to warn of the dangers posed by MWF, and failed to discharge its duties under the Agreement will be dismissed.

**B.     Crespo's Third Party Beneficiary Claim**

Crespo claims that he was a third party beneficiary to the Agreement and, therefore, Henkel owed him a duty under the Agreement. Pursuant to MCL § 600.1405, a third party beneficiary to a contract may enforce provisions of that contract. MCL § 600.1405 provides, in part, that:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.
> (2)(a) The rights of a person for whose benefit a promise has been made, as defined in (1), shall be deemed to have become vested, subject always to such express or implied conditions, limitations, or infirmities of the contract to which the rights of the promisee or the promise are subject, without any act or knowledge on his part, the moment the promise becomes legally binding on the promisor, unless there is some stipulation, agreement or understanding in the contract to the contrary.
> (b) If such person is not in being or ascertainable at the time the promise becomes legally binding on the promisor then his rights shall become vested the moment he comes into being or becomes ascertainable if the promise has not been discharged by agreement between the promisor and the promisee in the meantime.

"[T]he plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise.... Thus, only intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor." *Schmalfeldt v. North Pointe Ins. Co.*, 469 Mich. 422, 427, 670 N.W.2d 651, 654 (2003) (citing *Brunsell v. City of Zeeland*, 467 Mich. 293, 296, 651 N.W.2d 388, 390 (2002)). "[A] court should look no further than the form and meaning of the contract itself to determine whether a party is an intended third-party beneficiary within the meaning of [MCL § 600.]1405." *Id.* at 428, 670 N.W.2d at 654. Using an objective standard, the focus is "whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status." *Id.*

A third party beneficiary "may be a member of a class, but the class must be sufficiently described." *Koenig v. City of South Haven*, 460 Mich. 667, 680, 597 N.W.2d 99, 106 (1999). It is not enough to "imply a class on the basis of who might be injured by a breach" of Henkel's responsibilities under the Agreement. *See id.* at 683, 597 N.W.2d at 107. The Michigan Supreme Court in *Koenig* rejected the argument that a memorandum of understanding's grant of a right to entry by the Army Corps of Engineers to the City of South Haven for the stated purpose of

9

"regulation [of] public use" of pier structures bestowed third party beneficiary status on members of the public as intended beneficiaries. *Id*. at 671, 682-83, 597 N.W.2d at 101, 107. The *Koenig* court concluded that because the contract "only references the public generally and includes no provision by which South Haven undertook to do anything directly for a designated class of persons," that "[t]his is simply too broad a term to constitute a class that a contracting party could undertake directly to benefit under subsection 1405(1)." *Id*. at 682, 597 N.W.2d at 107.

There is no dispute that Crespo was not a named party in the Agreement. Rather, Crespo apparently argues that Henkel's duties under the Agreement related to the procurement, inventory, delivery, and utilization of MWFs were performed to or for the class of AAM employees that included Crespo.[2] However, the Agreement does not mention or sufficiently describe this class, and there is no indication in the Agreement that Henkel undertook to give or to do or to refrain from doing something directly to or for Crespo. The Agreement does not refer to any employees of AAM, aside from those who compose, along with Henkel, "a Commodity Management Team ("CMT") to monitor and measure the performance" of Henkel. (Agreement at ¶ 2.) There is no evidence that Crespo was a member of the CMT, nor is there evidence suggesting that the CMT or its members are intended beneficiaries under the Agreement.[3]

There is no provision pursuant to which Henkel undertook to do anything directly for a class that included Crespo. The purpose of the Agreement was for Henkel to provide chemical

---

[2] In his discussion of his status as a third-party beneficiary, Crespo briefly mentions that a duty to act in a nonnegligent manner may arise when a party, having no prior obligation to act, voluntarily undertakes to perform an act. (Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss at 11.) However, nowhere does Crespo argue that Henkel voluntarily undertook any act that gave rise to a duty to Crespo, nor does Crespo introduce any evidence that would support such a claim. The complaint specifically alleges the existence of the Agreement and does not allege that Henkel undertook an act that it was not obligated to perform under the Agreement.

[3] The CMT was to meet with Henkel and AAM to, among other things, review and measure Henkel's performance and address problems or concerns. (Agreement ¶ 2.)

10

management services for AAM's facility.  The Agreement's provisions are intended to benefit Henkel and AAM, as they require, for example, that Henkel maintain a staffing level for the commodity management program (Agreement at ¶ 1), participate in AAM's cost savings program (Agreement at ¶ 3), work to minimize the diversity of chemical materials required to maintain production (Agreement at ¶ 6), and indemnify AAM from any and all claims arising out of the Agreement (Agreement at ¶ 26).  Crespo has not shown that he was an intended beneficiary of the Agreement and he cannot sustain his third party beneficiary claim.

### IV.  Conclusion

For the foregoing reasons, the Court will grant Henkel's motion for summary judgment.

An Order consistent with this Opinion will be issued.  This concludes the matter before this Court.


Dated:  August 7, 2007                                      /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE